UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA        :

                                :

    -v-
                                :        11 CR 676 (RJS)

NIKOLAOS ANTONAKOS,
                                :

        Defendant.
-------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S PRETRIAL MOTIONS**


GLENN A. GARBER (GAG 9300)
350 Broadway
Suite 1207
New York, N.Y. 10013
(212) 965-9370
Attorney for Defendant Nikolaos Antonakos

**PRELIMINARY STATEMENT**

Defendant Nikolaos Antonakos, by and through his attorney, respectfully submits this reply memorandum of law in support of his pretrial motions, and specifically to address certain arguments raised by the Government in opposition to Mr. Antonakos's motion for a bill of particulars. As to his other pretrial motions, Mr. Antonakos relies upon his prior submissions to the Court.

**ARGUMENT**

**Point**

**A BILL OF PARTICULARS SHOULD ISSUE BECAUSE THE INDICTMENT IS INSUFFICIENT TO EFFECTIVELY APPRISE NIKOLAOS ANTONAKOS OF THE CHARGES AGAINST HIM**

In this Circuit it has long been held that "motions for bill[s] of particulars should be viewed with liberality." *United States v. Geller*, 163 F. Supp. 2d 502 (S.D.N.Y. 1958) (citing *United States v. O'Connor*, 237 F.2d 466, 475-76 (2d Cir. 1956)). This was so even before the 1966 amendment to Rule 7 of the Federal Rules of Criminal Procedure, establishing that a "court may direct the government to file a bill of particulars," Fed. R. Crim. Pro. 7(f). Congress enacted Rule 7(f) specifically to eliminate the requirement of showing cause for a bill of particulars, and "to encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." Notes of the Advisory Committee to Fed. R. Crim. Pro. 7(f) (as amended July 1, 1966).

The purposes served by a bill of particulars are to apprise the defendant of the charges against him in order to enable preparation for trial, to avoid unfair surprise, and to safeguard against a second prosecution for the same offense. A bill of particulars thus effectuates the protection of fundamental constitutional rights, including the Fifth Amendment rights to a grand

jury indictment and to not be twice placed in jeopardy for the same offense, and the Sixth Amendment rights "to be informed of the nature and cause of the accusation" and "to have compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. IV.

A criminal defendant's Sixth Amendment right to present a defense depends in large part upon receiving adequate notice of the specifics of the accusation, without which he cannot proceed in investigating, uncovering and obtaining witnesses and evidence, or developing theories to counter the Government's charges.

Even in the context of civil actions, the Supreme Court has held that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, a complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" is insufficient and should be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Specificity of charges is even more important in the criminal context, where a person's liberty is at stake. *See* Robert L. Weinberg, *Iqbal for the Accused?* The Champion, July 2010.

Indeed, on its face, the language of Federal Rule of Criminal Procedure 7(c) is more demanding than its civil counterpart, Federal Rule of Civil Procedure 8(c), the rule at issue in *Twombly* and *Iqbal*. Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment set forth "a plain, concise, and definite written statement of the *essential facts constituting the offense charged*[.]" Fed. R. Crim. P. 7(c) (emphasis added). In contrast, the civil rule does not explicitly require any facts to be pleaded. *See* Fed. R. Civ. Pro. 8(c). Yet the Supreme Court has made clear that the civil pleading standard "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 129 S. Ct. at 1949, and thus "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. It follows that the criminal pleading standard, which unlike the civil standard specifically requires "essential facts," must impose at least as high, if not a higher particularity requirement than that articulated in *Twombly* and *Iqbal*.

Even pre-*Iqbal* and *Twombly* precedent acknowledged that "while an indictment parroting the language of a federal criminal statute is often sufficient, there are crimes that must be charged with greater specificity." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see, e.g., Russell v. United States*, 369 U.S. 749 (1961) (to be valid, an indictment charging Contempt of Congress "must go beyond the words of" the statute). Such "greater specificity" in the charging document – meaning that the indictment "must do more than restate the language of the statute" – is necessary "[b]oth to provide fair notice to defendants and to ensure that any conviction would arise out of the theory of guilt presented to the grand jury." *Resendiz-Ponce*, 549 U.S. at 109-10 (citing *Russell*, 369 U.S. at 764).

In the present case, the indictment merely "parrot[s] the language" of the relevant criminal statute, asserting that each of the defendants "intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States." This is simply not specific enough to demonstrate how an "unlawful agreement" among the defendants occurred. Rather, this is precisely the kind of "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" that would be insufficient to meet the civil pleading standard, which on its face is *less* exacting that the

4

standard under Federal Rule of Criminal Procedure 7(c).

Without particularization of the facts requested, there is no assurance that Mr. Antonakos, if convicted by the petit jury, will have been convicted on the same facts both presented to and found by the grand jury. *Resendiz-Ponce*, 549 U.S. at 109-10; *Russell*, 369 U.S. at 770. As the Second Circuit has explained,

> [T]he policy underlying the requirement of specificity in the indictment is similar to that which forbids the amendment of an indictment without resubmission to a grand jury. It is to prevent the usurpation of power by the court and prosecutor in allowing a defendant to be convicted 'on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.' This policy is effectuated by preventing the prosecution from modifying the theory and evidence upon which the indictment is based.

*United States v. Silverman*, 430 F.2d 106, 109-10 (quoting *Russell*, 369 U.S. at 770).

Here, the Indictment consists of a bare recital of the statutory language with no specific factual allegations. No overt acts are identified in the Indictment. Without additional information, Mr. Antonakos and his counsel cannot adequately mount a defense to meet the charges and safeguard his constitutional right to present one. Nor can it be assured that the theory of guilt presented to the grand jury is the one for which he will be tried. *See United States v. Ramirez*, 54 F. Supp. 2d 25, 30 (D.D.C. 1999) ("A bill of particulars is all the more important in a narcotics conspiracy case because the indictment itself provides so little detail").

Citing *United States v. Taylor*, 707 F. Supp. 696 (S.D.N.Y. 1998), a narcotics conspiracy case from this Court, the *Ramirez* court held:

> [T]he defendants must be provided with certain information in order to permit them to prepare adequately for trial. Specifically, they are entitled to a bill of particulars setting forth the names of all persons the government would claim at trial were co-conspirators (whether or not they will be called as trial witnesses), the approximate dates and locations of any meetings or conversations not already identified in the indictment in which each defendant allegedly participated, and

> the approximate date on which each defendant allegedly joined the conspiracy... [T]he government... is required to provide particulars as to all overt acts (or at least all meetings and conversations) in which *any* defendant participated so that each defendant may understand the government's view of his alleged role in the conspiracy.

*Ramirez*, 54 F. Supp. 2d at 30 (emphasis in original).

The government asserts that Mr. Antonakos is not entitled to a bill of particulars because "the Complaint, Indictment, search warrant and wiretap applications, and other discovery are more than sufficient to apprise Antonakos of the charge against him." (Government's Memorandum of Law in Opposition to Pretrial Motions, dated December 6, 2011 ("Gov't Opp.") at 9). This argument misses the point that a bill of particulars is required where "the charges of *the indictment* are so general that they do not advise the defendant of *the specific acts of which he is accused*." *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995) (emphasis added). The specificity required of the indictment – the pleading of "essential facts" as required by Rule 7(c) – cannot be cured simply by reference to the Complaint or other discovery. There is no assurance that the Complaint, even if sufficient, reflects the same theory of guilt and evidence presented to, and found by, the grand jury.

Notably, the list of items asserted by the government as being "more than sufficient to apprise Antonakos of the charges against him," (Gov't Op at 9), obscures the reality that the Complaint is essentially the only source of information with respect to Mr. Antonakos. The search warrant application, which targeted four premises, none of which are associated with Mr. Antonakos, contains no reference to him. As to the conspiracy as a whole, the search warrant application provides no information beyond that which is in the Complaint, which the search warrant application incorporates and relies upon to establish probable cause. (*See* Affidavit of

Special Agent Stephen Chokshi, dated July 26, 2011, ¶ 11).

The wiretap applications also contain no references to Mr. Antonakos. The first application was for a wiretap on Ismael Canales's phone, and was based on Canales's alleged sales of narcotics to an undercover officer. The subsequent applications, for phones used by Canales as well as two alleged associates, Jonathan Rodriguez and Luis Medina, relied upon information gleaned from the prior wiretaps. The same wiretapped conversations excerpted in the subsequent wiretap applications are those excerpted in the Complaint. Finally, the "other discovery" referred to by the government consists of the wiretapped phone calls themselves. The few of these that allegedly involve or reference Mr. Antonakos are the same ones identified and excerpted in the Complaint.

Thus, the allegations in the Complaint are the only real source of information as to any specific acts by Mr. Antonakos. Significantly, in this case the "acts" alleged by the government are actually not "acts" but statements. The government contends that the wiretapped conversations were about narcotics transactions. However, the government has not alleged which of the transactions that were supposedly discussed actually occurred. Thus, the wiretapped calls alone are insufficient to apprise Mr. Antonakos of the specific *acts* of which he is accused.

With respect to the alleged structure of the conspiracy and roles played by different members, the government points to paragraph 13 of the Complaint, in which Agent Shokshi states his belief that Ismael Canales, Jose Medina, and Jonathan Rodriguez "are suppliers of illegal narcotics" and that Mr. Antonakos, Javier Delarosa, Ivan Canales, and Joel Beltre "are distributors of illegal narcotics." (Complaint, ¶ 13). This divide between "suppliers" and "distributors," with no explanation of what these roles are or how they differ, provides little

illumination of the purported roles played by the various members of the conspiracy. The Complaint also fails to explain the alleged relationships between these "suppliers" and "distributors," who are all purported to be part of the same "drug trafficking organization." (Complaint, ¶ 6).

The Complaint also makes contradictory allegations. For example, the Complaint asserts that Rodriguez "supplies Ismael Canales...with illegal narcotics," (Complaint, ¶ 22), seemingly in conflict with the earlier allegation that Canales is himself a "supplier" rather than a "distributor." (Complaint, ¶ 13). Also apparently in conflict with the allegation that Canales is a "supplier" rather than a "distributor" is that he allegedly distributed narcotics to a confidential informant and an undercover officer on multiple occasions. (Complaint, ¶¶ 7-9). The Complaint does not offer any explanation for these discrepancies. As to Mr. Antonakos, the Complaint also alleges that he "distributes illegal narcotics on behalf of Jonathan Rodriguez, a/k/a 'Cabo,' and Ismael Canales, a/k/a 'Ish'[.]" (Complaint, ¶ 28). This allegation suggests different conspiracies and is therefore inconsistent with the allegation that the defendants are all part of the same "drug trafficking organization." (Complaint, ¶ 6).

In sum, the government's vague allegations do not adequately apprise Mr. Antonakos of the allegations against him to fairly enable him to prepare a defense, and therefore he respectfully asks this Court to order the government to provide a bill of particulars as set forth in defendant's previous submission.

## **CONCLUSION**

For the forgoing reasons, and those set forth in defendant's prior submissions to the Court, the defendant's motions should be granted.

Dated: New York, New York
December 12, 2011

Respectfully submitted,

_____//s//_____
GLENN A. GARBER, ESQ.
Attorney for defendant Nikolaos Antonakos
350 Broadway, Suite 1207
New York, N.Y. 10013
(212) 965-9370

cc: Alvin Bragg
Sarah Paul
Assistant United States Attorneys

*Via ECF*